UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY HUTCHINS

                  Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

Civil Action No.: 18-10182
Honorable Robert H. Cleland
Magistrate Judge Elizabeth A. Stafford

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 12, 14]

Plaintiff Anthony Hutchins appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied his application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). The parties also filed supplemental briefing on whether a remand for a *de novo* administrative hearing is necessary because the ALJ below was not properly appointed under the appointments clause of the Constitution. [ECF No. 18, 19]. As described below, the Court finds that Supreme Court precedent compels a finding that Hutchins is entitled to remand for a *de novo* hearing and that the ALJ violated the treating physician rule.

The Court therefore **RECOMMENDS** that:

- Hutchins' motion **[ECF No. 12]** be **GRANTED;**

- the Commissioner's motion **[ECF No. 14]** be **DENIED**; and

- this matter be **REMANDED** for a *de novo* hearing.

## I. BACKGROUND

Born March 28, 1971, Hutchins was 43 years old on September 22, 2014, the date of his application for benefits. [ECF No. 8-5, Tr. 172]. He has completed two years of college education and has past relevant work as a cashier, tire service supervisor and tire builder. [ECF No. 8-2, Tr. 28; ECF No. 8-6, Tr. 202]. Hutchins claimed disability due to "brittle diabetes impairment, hypertensive cardiovascular disease/hypertension, [and] cervical spine impairment." [ECF No. 8-6, Tr. 201].

After a hearing on February 1, 2017, during which Hutchins and a vocational expert (VE) testified, the ALJ found that Hutchins was not disabled. [ECF No. 8-2, Tr. 30, 37-79]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-3]. Hutchins timely filed for judicial review. [ECF No. 1].

It is undisputed that Hutchins raised no Appointments Clause challenge before the Commissioner.

2

## II.   ANALYSIS

### A. Appointments Clause Challenge

#### 1.

The Court will begin by addressing Hutchins' argument that his case should be remanded for a *de novo* administrative hearing because the ALJ below was not properly appointed according to the Appointments Clause. U.S. Const., Art. II, § 2, cl. 2   Hutchins' argument flows from the recently-decided *Lucia v. SEC*, 138 S.Ct. 2044, 2051 (2018), which held that ALJs are "Officers of the United States" under the Appointments Clause, and thus must be appointed by "the President, a court of law, or a head of department." *Lucia* dictates that a party making "a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." *Lucia*, 138 S.Ct. at 2055. Although *Lucia* specifically addressed only SEC ALJs, the Solicitor General has acknowledged that the Supreme Court's holding encompassed all ALJs, and the Acting Commissioner of Social Security ratified the appointment of its ALJ's in July 2018 to address any Appointments Clause deficiency going forward. *Page v. Comm'r of Soc.Sec.*, 344 F.Supp.3d 902 (E.D. Mich., Oct. 31, 2018). And here, the Commissioner does not argue that the ALJ below was properly appointed at the time of Hutchins' hearing; it contends only

3

that Hutchins has forfeited this claim for relief by failing to present it at the administrative level.

The Commissioner's forfeiture argument is overwhelmingly endorsed by district courts across the country. *See Velasquez on Behalf of Velasquez v. Berryhill*, No. CV 17-17740, 2018 WL 6920457, at *2 (E.D. La. Dec. 17, 2018), *adopted*, No. CV 17-17740, 2019 WL 77248 (E.D. La. Jan. 2, 2019) (collecting cases). For example, in *Page*, an opinion from this district, the court held that a claimant who failed to raise the appointment clause issue at the administrative level waived her argument that the ALJ charged to adjudicate her claim was unconstitutionally appointed. 344 F.Supp.3d at 904-05. As here, the *Page* plaintiff "failed to raise, much less develop the Appointments Clause issue at the administrative level although the split in authority over the constitutional adequacy of presiding ALJs occurred long before [Page's] application for benefits was considered by the Appeals Council." *Id.*

The *Page* plaintiff cited an August 6, 2018 Social Security memorandum stating that ALJ's are "not to respond" to constitutional challenges to their appointments as a defense to her failure to raise the issue at the administrative level. *Id.* at 905. The court rejected that argument because the same memorandum states that such challenges

may be brought before the Appeals Council.  *Id.*  "Moreover, a regulation in effect long prior to the events in question states that claimants may receive an expedited appeals process to challenge a 'provision in the law that you believe is unconstitutional.'"  *Id.*  (quoting 20 C.F.R. § 404.924(d)).

The *Page* court also pointed out that courts considering "the issue have unanimously rejected attacks on the validity of the ALJ's appointment under *Lucia* brought under 42 U.S.C. 405(g) where the claimant failed to make a constitutional challenge at the administrative level."  *Id.* (citing *Stearns v. Berryhill,* 2018 WL 4380984, at *6 (N.D.Iowa September 14, 2018); *Garrison v. Berryhill*, 2018 Wl 4924554, at *2 (W.D.N.C. October 10, 2018); *Davidson v. Comm'r of Soc.Sec.*, 2018 WL 4680327, at *2 (M.D. Tenn., Sept. 28, 2018); *Salmeron v. Berryhill*, 2018 WL 4998107, at *3 (C.D.Cal. October 15, 2018)).

Bucking this trend, a magistrate judge in the Eastern District of Pennsylvania recommended in November 2018 that two cases be remanded for proceedings before properly appointed ALJ's.  *Muhammad v. Berryhill*, No. 18-172 (E.D. Pa., Nov. 2, 2018); *Godschall v. Comm'r of Soc.Sec.*, No. 18-1647 (E.D. Pa., Nov. 2, 2018).  Magistrate Judge Timothy R. Rice disagreed with every other opinion that relied on

forfeiture to reject the claimant's requests for remand, with his reasoning

mainly spelled out in *Muhammad.*[1]

## 2.

Judge Rice cited *Freytag v. Comm'r*, 501 U.S. 868 (1991), as holding

that Appointments Clause objections are structural constitutional objections

that can be considered on appeal even if they were not ruled on below.

[*Id.*, PageID.525].   In *Freytag*, the petitioners argued that the assignment

of their complex case to a special trial judge of the Tax Court violated the

Appointments Clause.  501 U.S. at 878.   The Commissioner had argued

that the petitioners waived their constitutional challenge by failing to timely

object to the assignment of their cases to the special trial judge and even

consenting to the assignment.  *Id.* at 878.  Rejecting this argument, the

Court emphasized that the petitioners' constitutional challenge was "neither

frivolous nor disingenuous," and raised an important separation-of-powers

concern.  *Id.* at 878-79.

> The roots of the separation-of-powers concept embedded in the
> Appointments Clause are structural and political. Our
> separation-of-powers jurisprudence generally focuses on the
> danger of one branch's aggrandizing its power at the expense
> of another branch. The Appointments Clause not only guards
> against this encroachment but also preserves another aspect of

---

[1] For the same reasons explained here, this Court followed Judge Rice's reasoning in *Fortin v. Comm'r of Soc. Sec.*, No. CV 18-10187, 2019 WL 421071, at *1 (E.D. Mich. Feb. 1, 2019).

the Constitution's structural integrity by preventing the diffusion of the appointment power.

*Id.* at 878 (citation omitted).

The *Freytag* Court cited its precedent as "expressly includ[ing] Appointments Clause objections to judicial officers in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below." *Id.* at 878-79. And although the Court acknowledged that litigants must generally raise all issues and objections at trial, it concluded that the strong interest in maintaining separation of powers deemed this "one of those rare cases in which we should exercise our discretion to hear petitioners' challenge to the constitutional authority of the Special Trial Judge." *Id.* at 879.

The Commissioner emphasizes the *Freytag* Court's description of it being a "rare case" and argues that it created no categorical rule excusing Appointments Clause challenges from general waiver and forfeiture principles. [ECF No. 19, PageID.1279]. As a general matter, this argument has support. *See, e.g, In re DBC*, 545 F.3d 1373, 1380 (Fed. Cir. 2008) ("The Supreme Court has never indicated that such challenges must be heard regardless of waiver."). But the Commissioner's argument is flawed here because it presumes that general waiver and forfeiture principles apply to Social Security cases at the administrative level; they do not. As

7

Judge Rice pointed out in *Muhammad,* the Supreme Court has in fact held that claimants need not exhaust issues before the Appeals Council to preserve them for judicial review.  *Sims v. Apfel*, 530 U.S. 103 (2000).

**3.**

To reach its holding, *Sims* first noted that exhaustion requirements are "largely creatures of statute," and that "the Commissioner does not contend that any statute requires issue exhaustion in the request for review."  *Id.* at 107-08.  And while the Court has at times created issue-exhaustion requirements, "the desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding."  *Id.* at 108-09.

The *Sims* Court found that Social Security proceedings are dissimilar to normal adversarial litigation.  In fact, "[t]he differences between courts and agencies are nowhere more pronounced than in Social Security proceedings."  *Id.* at 110. That is because Social Security proceedings are "inquisitorial rather than adversarial"; no representative of the Commissioner appears before the ALJ to oppose benefits and the ALJ's duty is "to investigate the facts and develop the arguments both for and against granting benefits."  *Id.* at 110-11.  At the Appeals Council level, the

8

Commissioner acts as an advisor rather than litigant. *Id.* at 111.  And the Council reviews the entire record instead of depending on the claimant to identify issues, which makes sense because some claimants are unrepresented or are represented by nonlawyers.  *Id.* at 111-12. "Accordingly, we hold that a judicially created issue-exhaustion requirement is inappropriate. Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Id.* at 112.

The Commissioner notes that the *Sims* majority expressly did not decide whether a claimant must exhaust issues before an ALJ.  [ECF No. 19, PageID.1283, (citing *Sims*, 530 U.S. at 107)].  While true, it is hard to reconcile *Sims's* reasoning that Social Security proceedings before an ALJ are non-adversarial and thus profoundly dissimilar to court litigation with a finding that a judicially-created issue-exhaustion requirement is compatible with *Sims's* holding.  And the Commissioner does not show that the ALJ had any authority to address Hutchins' constitutional challenge.  Indeed, in August 2018, ALJs were instructed not to respond to constitutional challenges.  *Page*, 2018 WL 5668850 at *3.  *Page* noted that a regulation allows claimants to receive an expedited appeals process to challenge a "provision in the law that you believe is unconstitutional." § 404.924(d)).

But the *Page* court did not address *Sims's* holding that a claimant's failure to raise an issue before the Appeals Council does not act as a waiver. *Sims*, 530 U.S at 112.

## 4.

The Commissioner cites *Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001) and other opinions as holding that, despite *Sims,* claimants who fail to raise arguments before the ALJ waive them.  [ECF No. 19, PageID.1284 & n. 5]. Those opinions, however, referred to matters quintessentially within the jurisdiction of the ALJ.  For example, *Mills* had to do with the court's discretion to consider new evidence not presented to the ALJ; this issue was "entirely different" from *Sims's* decision to "reject[ ] a waiver claim and allow[ ] a social security applicant to raise in court an issue not raised at the Appeals Council stage."  *Mills,* 244 F.3d at 4.  And given *Sims's* holding that claimants need not exhaust issues at the Appeals Council level in Social Security cases, the Commissioner's citation to opinions requiring Appointments Clause challenges to be made at the administrative level are distinguishable.  *See, e.g., Kabani & Co. v. SEC*, No. 17-70786, 2018 WL 3828524, at *1 (9th Cir. Aug. 13, 2018) (distinguishable because of the SEC's statutory exhaustion requirement (15 U.S.C. § 78y(c)); *N.L.R.B. v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013)

10

(distinguishable because NLRA as an "explicit jurisdictional exhaustion requirement includes an exhaustion requirement."). Given *Sims*, this is indeed that rare type of case described in *Freytag* in which a court should entertain an Appointments Clause challenge despite it not being raised at the administrative level. *Freytag*, 501 U.S. at 879.

This Court is unsatisfied with the reasoning of other opinions that have considered and rejected *Sims's* applicability to the issue here. In *Gothard v. Comm'r of Social Security*, 17-13638 (E.D. Mich. October 10, 2018), the court found persuasive the reasoning of those opinions that the claimant could have raised an Appointments Clause argument before the ALJ. [ECF No. 23-1]. But as noted in *Sims*, the hearing before the ALJ is non-adversarial and the ALJ's duty is "to investigate the facts and develop the arguments both for and against granting benefits." 503 U.S. at 110-11. Claimants appearing before the ALJ may not even be represented by an attorney. *Id*. at 111-12. *Page* recognized that ALJs lack authority to decide constitutional challenges. *Page*, 2018 WL 5668850 at *3. The Court agrees with *Muhammad* that "it makes little sense to require a claimant to raise an issue before an ALJ who is powerless to resolve it." *Muhammad*, at 11.

11

Compelled by *Sims* and *Freytab*, the Court recommends that this matter be remanded to the Commissioner for a *de novo* hearing.  This recommendation is not made lightly or without concern for its potential impact on the Commissioner.

## B. The ALJ's Decision

The Court will next address Hutchins' argument that the ALJ erred in deciding that Hutchins is not disabled.

## 1.

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 920(c).

12

12 months, no disability will be found. *Id.* Third, if the claimant's severe

impairments meet or equal the criteria of an impairment set forth in the

Commissioner's Listing of Impairments, the claimant will be found disabled.

*Id.* If the fourth step is reached, the Commissioner considers its

assessment of the claimant's residual functional capacity ("RFC"), and will

find the claimant not disabled if he or she can still do past relevant work.

*Id.* At the final step, the Commissioner reviews the claimant's RFC, age,

education and work experiences, and determines whether the claimant

could adjust to other work. *Id.* The claimant bears the burden of proof

throughout the first four steps, but the burden shifts to the Commissioner if

the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14

F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Hutchins was not

disabled. At the first step, she found that Hutchins had not engaged in

substantial gainful activity since February 23, 2014, the alleged onset date.

[ECF No. 8-2, Tr. 21]. At the second step, she found that Hutchins had the

severe impairments of "degenerative changes of the cervical spine, and

cervical radiculopathy, status post fusion; diabetes, tendinosis of the left

shoulder, osteoarthritis of the left AC joint, bursitis of the left shoulder,

ADD/ADHD, major depressive disorder; generalized anxiety disorder, and

13

cannabis abuse in remission." [*Id.*].  Next, the ALJ concluded that none of

Hutchins's impairments, either alone or in combination, met or medically

equaled the severity of a listed impairment.  [*Id.*, Tr. 22-24].

Between the third and fourth steps, the ALJ found that Hutchins had

the RFC to perform light work, except that:

> [H]e can lift and/or carry 10 pounds occasionally and less than
> 10 pounds frequently.  He can stand and/or walk 6 hours and
> sit 6 hours in an 8-hour workday.  He can push and pull only
> occasionally with the non-dominant left upper extremity.  He
> can never climb ladders, ropes, or scaffolds.  He can
> occasionally climb ramps or stairs.  He can occasionally stoop,
> kneel, and crouch.  He can never crawl.  He can never reach
> overhead with the bilateral upper extremities, but can frequently
> reach in all other directions with the bilateral upper extremities.
> He can occasionally handle and finger with the left upper
> extremity.  He can perform work in an environment with a
> moderate noise level, as defined by the Selected
> Characteristics of Occupations (OSC).  He can tolerate
> occasional exposure to extreme cold and humidity in the work
> setting, but should have no use of vibratory hand tools.  He can
> perform no work at unprotected heights or in the vicinity of
> unprotected dangerous machinery.  He can perform no
> commercial driving.  He can tolerate frequent interactions with
> co-workers and supervisors.  He can have occasional
> interactions with the general public.  He can perform routine
> tasks and simple tasks, defined as those that can be learned in
> 30 days.  He can tolerate occasional changes in the work
> setting.

[*Id.*, Tr. 24].  At step four, the ALJ found that Hutchins was unable to

perform past relevant work.  [*Id.*, Tr. 28].  At the final step, after considering

Hutchins's age, education, work experience, RFC, and the testimony of the

VE, the ALJ determined that there were jobs that existed in significant numbers that Hutchins could perform, including positions as a document preparer, an inspector-table worker, and a final assembler, rendering a finding that he was not disabled.  [*Id.*, Tr. 28-29].

### 2.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Hutchins' arguments focus solely on the ALJ's analysis of his mental impairments.  He argues that the ALJ violated the treating physician rule by according only partial weight to the opinion of his treating psychiatrist, Jonathan Henry, M.D.; that her subjective symptom analysis was improper;

15

and that she did not adequately account for his moderate limitations in concentration, persistence, and pace in the mental RFC. [ECF No. 12]. The Court finds that the ALJ erred in giving only partial weight to Dr. Henry's opinion and recommends remand for that reason.

### 3.

In April 2016, Dr. Henry, who is a psychiatrist with Community Mental Health for Central Michigan (CMH), began seeing Hutchins every six to eight weeks, and he completed a Mental Impairment Questionnaire for Hutchins in August 2016. [ECF No. 8-19, Tr. 998]. Dr. Henry diagnosed Hutchins with major depressive disorder, recurrent, severe; generalized anxiety disorder; and attention deficit hyperactivity disorder (ADHD). [*Id.*]. He also noted the psychosocial factors of poor finances and unemployment, and listed Hutchins' medications as Buspar, Concerta, and Wellbutrin. [*Id.*]. Dr. Henry noted that Hutchins had been hospitalized for his mental symptoms in 1995. [*Id.*]. He opined that Hutchins was not a malingerer and that his limitations would last at least twelve months. [*Id.*].

Supporting his assessment, Dr. Henry cited Hutchins' depressed mood, anxiety, constricted affect, feelings of guilt or worthlessness, hostility or irritability, anhedonia, decreased energy, social withdrawal or isolation, and excessive sleep. [*Id.*, Tr. 999]. As to Hutchins' attention and

concentration, Dr. Henry noted difficulty thinking or concentrating and easy distractibility.  [*Id*.].  Dr. Henry found that Hutchins' "most frequent and/or severe" symptoms were "chronic depression" and "attention and concentration problems," and that, "[a]s is very common generally, [Hutchins'] depression aggravates [his] pain."  [*Id.*, Tr. 1000].  He also stated that Hutchins had "episodes of decompensation or deterioration in a work or work-like setting which causes [him] to withdraw from the situation and/or experience an exacerbation of symptoms," and explained that work-related stress aggravated his depression and anxiety.  [*Id*.].

Dr. Henry opined that Hutchins had "marked" limitations in maintaining attention and concentration for extended periods; performing activities within a schedule and consistently being punctual; working in coordination with or near others without being distracted by them; completing a workday without interruptions from psychological symptoms; performing at a consistent pace without rest periods of unreasonable length or frequency; and accepting instructions and responding appropriately to criticism from supervisors.  [*Id.*, Tr. 1001].  He had "moderate to marked" limitations in understanding and remembering detailed instructions; carrying out detailed instructions; sustaining ordinary routine without supervision; making simple work-related decisions; and responding

appropriately to workplace changes. [*Id.*]. And he had "moderate"

limitations in every other category except one.[3] [*Id.*]. Lastly, Dr. Henry

opined that Hutchins would miss work more than three times per month

and that Hutchins' symptoms dated back to February 2014. [*Id.*, Tr. 1002].

The ALJ gave Dr. Henry's August 2016 opinion only partial weight,

finding that it was inconsistent with Hutchins' activities of daily living and

with the clinical observations of record. [ECF No. 8-2, Tr. 26-27]. She

noted that Hutchins testified to playing Scrabble up to three times a month,

reading books and playing video games, and that he acknowledged in

testimony that such activities require a fair degree of concentration. [*Id.*].

The ALJ also recounted in another part of the decision that Hutchins

engaged in social events, drove, handled his financial matters, and could

cook simple meals. [*Id.*, Tr. 23]. And she cited clinical evidence that

Hutchins had stated that he could perform independently all activities of

daily living; that his affect, behavior, and appearance were appropriate; that

his judgment and reason were within normal limits; that he denied

hallucinations; and that he had relevant thought content and thought

process that was within normal limits. [*Id.*, Tr. 26]. She further noted that

---

[3] Hutchins had "none-to-mild" limitation in asking simple questions or requesting assistance. [ECF No. 8-19, Tr. 1001].

Hutchins had denied depression at times, and that he denied suicidal or homicidal ideation. [*Id*.].

## 4.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. To assess a treating physician's opinion properly, an ALJ must analyze it under both prongs of the controlling weight test. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723.

For claims of mental disability, the Sixth Circuit requires that the ALJ to give deference to the diagnoses and observations of professionals who are trained in psychotherapy.

> [W]hen mental illness is the basis of a disability claim, clinical
> and laboratory data may consist of the diagnosis and

observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir.1989) (citations and internal quotation marks omitted).

Here, Hutchins contends that Dr. Henry's opinion is supported by his treatment records.  Those records show that, in June 2016, Hutchins reported that his mood was "under generally at least fair control," but that he had ongoing problems with anhedonia[4] and dysphoria on a "fairly regular basis."  [ECF No. 8-16, Tr. 801].   Those symptoms were also said to be "under some degree of reasonable control."  [*Id.*].  He also reported problems with energy, motivation and self-esteem, precipitated by chronic physical pain.  [*Id.*].  Upon mental status examination, Hutchins had a depressed and anxious mood, somewhat labile affect, and limited insight and judgment.  [*Id.*, Tr. 804].  At that time, he was taking Vyvanse for ADHD, but it was not helping, so he was switched to a Methylphenidate-based product.  [*Id.*, Tr. 805].

---

[4] "Anhedonia is the inability to feel pleasure. It's a common symptom of depression as well as other mental health disorders." https://www.webmd.com/depression/what-is-anhedonia#1 (lasted visited on February 12, 2019).

After his June and August visits, Hutchins returned to Dr. Henry in

October 2016, reporting that his depressed mood persisted and seemed to

be getting worse, and that he also had sleep and appetite disturbance, poor

self-esteem and poor concentration.  [ECF No. 8-20, Tr. 1007].  He was

assessed with a depressed mood, attenuated affect, and limited insight and

judgment.  [*Id.*, Tr. 1010].  Because of the persistence of his symptoms, Dr.

Henry added Pristiq to help address his depression, while tapering him off

of Concerta, which Hutchins reported was not helping his symptoms.  [*Id.*,

Tr. 1011].  He remained on Buspar and Wellbutrin.  [*Id.*].  In November, he

continued to be assessed with depressed mood, attenuated affect, and

limited insight and judgment.  [ECF No. 8-21, Tr. 1096].

Dr. Henry next saw Hutchins in January 2017, with Hutchins reporting

his depression as "somewhat worse," noting dysphoria and anhedonia

"more days than not," sleeping more than usual, and having worse than

typical concentration issues.  [*Id.*, Tr. 1099].  He described being most

bothered by his ADHD symptoms, including hyperactivity, which reportedly

prevented him from being able to sit through a movie from beginning to

end.  [*Id.*].  As before, examination revealed a depressed mood, attenuated

affect, and limited insight and judgment.  [*Id.*, Tr. 1102].  Dr. Henry

discontinued Hutchins' recently prescription of Pristiq and noted that trials

of a methylphenidate product, an amphetamine-based product, and tricyclic

antidepressants had all failed to alleviate Hutchins' symptoms.  [*Id.*, Tr.

1103].  Dr. Henry started Hutchins on a trial of Catapres.  [*Id.*, Tr. 1103].

This was his last visit with Dr. Henry before his February 1, 2017 hearing

date.

Hutchins also points to records from CMH that preceded his

treatment with Dr. Henry.  He began reporting ongoing depression and

anxiety in September 2014, stating that he felt depressed at least two or

three days per week, which had been ongoing for the past year.  [ECF No.

8-9, Tr. 431].  A social work with CMH assessed Hutchins as having

depression and anxiety with a global assessment of functioning (GAF)

score of 45.[5]  [*Id.*, Tr. 466].  The records showed that Hutchins experienced

decreased energy and appetite, difficulty with sleep, depression, and some

constriction in affect.  [*Id.*, Tr. 464; ECF No. 8-12, Tr. 591, 630].  Hutchins

continued with therapy throughout 2014, continuing to report feelings of

depression, anxiety, and a lack of concentration.  [ECF No. 8-9, Tr. 467-78;

ECF No. 8-10, Tr. 480; ECF No. 8-12, Tr. 633-35].

---

[5] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below."  *Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 461 Fed. Appx. 433, 436 n.1 (6th Cir. 2012) (citations omitted).

In 2015, Hutchins began seeing Victor Vasquez, D.O., another CMS psychiatrist, who diagnosed Hutchins with major depressive disorder, recurrent, moderate; generalized anxiety disorder; and cannabis abuse. [ECF No. 8-12, Tr. 591]. Hutchins reported being unable to sit through a movie due to poor concentration, and after a few visits Dr. Vasquez increased his ADHD medication to help with his "concentration/attention." [ECF No. 8-11, Tr. 547, 578, 583].

Thus, Dr. Henry's opinion was based on a substantial amount of clinical and laboratory data—diagnoses and observations of professionals of CMH who were trained in psychotherapy. *Blankenship,* 874 F.2d at 1121.

The Commissioner defends the ALJ's decision by noting that the ALJ cited record evidence of normal affect, behavior, appearance, judgment, reason, thought content, and thought process, in addition to denial of hallucinations, suicidal and homicidal ideation, and above average intellectual functioning. [ECF No. 8-2, Tr. 26]. But these normal results do not contradict the overwhelming evidence of Hutchins' persistent depression, anxiety and concentration issues, limited judgment and insight, and abnormal affect. And a claimant need not suffer hallucinations, or have suicidal or homicidal ideation, in order to have disabling mental

23

impairments.  By emphasizing only the normal results throughout the record, which any detailed medical record would be expected to contain, the ALJ did not give good reasons for limiting the weight given to Dr. Henry's opinion.

Similarly, the ALJ noted that Hutchins "consistently stated that he could independently perform all activities of daily living," [ECF No. 8-2, Tr. 26, citing ECF No. 8-9, Tr. 432, 456-457; ECF No. 8-10, Tr. 482; ECF No. 8-11, Tr. 547; ECF No. 8-16, Tr. 812], and testified that he plays Scrabble, reads books, and plays video games, [ECF No. 8-2, Tr. 26-27, citing Tr. 50-51].  But Hutchins also testified that he could not complete a game of Scrabble without taking breaks often, [ECF No. 8-2, Tr. 57], reported that he could not sit through an entire movie in one sitting, [ECF No. 8-11, Tr. 547, 578, 583; ECF No. 8-21, Tr. 1099], and could only prepare simple frozen or prepackaged meals [ECF No. 8-6, Tr. 219].

The Sixth Circuit has ruled that a claimant's ability to do daily activities such as "drive, clean her apartment, care for two dogs, do laundry, read, do stretching exercises, and watch the news" constitute no more than "minimal daily functions are not comparable to typical work activities." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).  Likewise, Hutchins' ability to prepare frozen meals, do a limited

24

amount of driving, shop for groceries, read books for an indeterminate amount of time, and play video games and Scrabble do not contradict Dr. Henry's medical opinion or show that Hutchins can work. If anything, Hutchins' inability to complete a game of Scrabble in one sitting or watch an entire movie from start to finish underscore his limitations in concentration and attention span.

The ALJ's analysis failed to show that Dr. Henry's August 2016 opinion was inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723. Thus, she should have given the opinion controlling weight under the treating physician rule, which would have resulted in a different RFC. The Court thus recommends remand and that the ALJ also be instructed to reassess Hutchins' subjective symptom allegations.

**5.**

Hutchins also argues that the ALJ proposed a flawed hypothetical question to the VE by accounting for Hutchins' moderate limitation in concentration, persistence, and pace (CPP) with a mere limitation in performing routine and/or simple tasks and tolerating only occasional changes in the work setting. [ECF No. 8-2, Tr. 69]. As this hypothetical restriction is identical to a portion of the RFC, Hutchins' challenge of the hypothetical is a collateral attack on the RFC itself. *See Casey v. Sec'y of*

*Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."); *Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) (Plaintiff's step five argument is a "veiled attack" on the RFC when the hypothetical is identical to the RFC assessment).  So Hutchins retains the burden to prove that he requires a more restrictive mental RFC. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

Supporting his argument, Hutchins cites *Ealy v. Comm'r of Soc. Sec.*, 594 F3d. 504, 516-17 (6th Cir. 2010), in which the court held that limiting a claimant to simple, repetitive jobs in a non-public work setting did not account for a moderate limitation in CPP.  "However, *Ealy* does not hold that the terms 'simple, repetitive,' 'routine' or similar modifiers are intrinsically inadequate to address moderate CPP deficiencies."  *Smith v. Comm'r of Soc. Sec.*, No. 13–11610, 2014 WL 4605826, at *11 (E.D. Mich. Sept. 15, 2014).  Indeed, there is nothing inconsistent with a finding of moderate difficulties with CPP at step three and an RFC limiting the claimant to simple, routine tasks.  *Southworth v. Comm'r of Soc. Sec.*, No.

26

12–12243, 2013 WL 3388946, at *16 (E.D.Mich. July 8, 2013 (collecting cases)).

Hutchins does not elaborate on the reason that his moderate limitation in CPP would require a more restrictive RFC, as is his burden. Thus, this argument does not constitute an independent reason for remand. But having recommended remand of this matter for other reasons, the ALJ should be required to reassess Hutchins' limitations in CPP and craft an RFC with restrictions fully accounting for his limitations.

## III.  CONCLUSION

The Court **RECOMMENDS** that Hutchins's motion [ECF No. 12] be **GRANTED,** the Commissioner's motion [ECF No. 14] be **DENIED**; and that this matter be remanded for a *de novo* hearing in front of a properly appointed ALJ and for further consideration consistent with this report and recommendation.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>

Dated: February 13, 2019       United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Hutchins v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

28